﻿Citation Nr: AXXXXXXXX
Decision Date: 12/17/18 Archive Date: 12/17/18

DOCKET NO. 181030-743
DATE: December 17, 2018
ORDER
Entitlement to service connection for a right shoulder disability is denied.
Entitlement to a rating in excess of 30 percent disabling for service-connected headaches is denied. 
Entitlement to a rating in excess of 30 percent disabling for service-connected posttraumatic stress disorder (PTSD) also claimed as anxiety and depression, is denied.
FINDING OF FACT
1. A right shoulder disability is not shown to have manifested in service; right shoulder arthritis is not shown to have manifested to any degree in the first post-service year; and there is no evidence or allegation of an event or injury in service to which the Veteran’s current right shoulder disability may be otherwise related.
2. At no time under consideration are the Veteran’s headaches manifested by very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability. 
3. At no time under consideration is the Veteran’s PTSD manifested by more than an occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks as a result of various symptoms. 
CONCLUSION OF LAW
1. The criteria for service connection for a right shoulder disability have not been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.
2. The criteria for a rating in excess of 30 percent disabling for service-connected headaches, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.124a, Diagnostic Codes 8881-8100.
3. The criteria for a rating in excess of 30 percent disabling for service-connected PTSD also claimed as anxiety and depression, have not been met. 38 U.S.C. §§ 1155, 5107, 38 C.F.R. §§ 4.1, 4.3, 4.130, Diagnostic Code 9411.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 
The Veteran served on active duty in the United States Air Force from August 2002 to August 2008. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 
The Board notes that the AOJ is still working on the Veteran’s claims for increased ratings for his service-connected sleep apnea and chronic fatigue syndrome as well as his claims for service connection for back, neck and right knee disabilities and his claim for a total disability rating based on individual unemployability (TDIU). Therefore, such claims are not before the Board at this time. 
Service Connection Claim
Service connection may be granted for disability due to disease or injury incurred in or aggravated by active military service. 38 U.S.C. §§ 1131; 38 C.F.R. § 3.303. Service connection may also be granted for any disease initially diagnosed after discharge when the evidence establishes that disability was incurred in service. 38 C.F.R. § 3.303 (d). Service connection may be established by showing continuity of symptomatology after discharge. 38 C.F.R. § 3.303 (b). 
To substantiate a claim of service connection, there must be evidence of: (1) a current disability (for which service connection is sought); (2) incurrence or aggravation of a disease or injury in service; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-1167 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303 (a). 
Certain chronic diseases, to include arthritis, may be presumed to be service connected, if they are manifested to a compensable degree within a specified period of time post-service (one year for arthritis). 38 U.S.C. §§ 1112, 1137; 38 C.F.R. §§ 3.307 (a)(3), 3.309(a). 
When there is an approximate balance of positive and negative evidence regarding the merits of an issue, the benefit of the doubt shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. If the preponderance of the evidence is against the claim, the claim is to be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).
Entitlement to service connection for a right shoulder disability is denied.
The Veteran contends that he suffers from a right shoulder disability as a direct result of his active duty service, however there is no allegation of any incident or injury in service. 
The Veteran’s service treatment records are silent for any complaints, treatment or diagnosis of a right shoulder disability. Post-service treatment records reflect the Veteran’s reports of chronic right shoulder pain. A February 2018 note reflects the Veteran’s report of a resolved right shoulder condition. There is no indication of a connection between the Veteran’s post-service right shoulder pain and his active duty service. 
After reviewing the record, the Board notes that the evidence clearly reflects right shoulder pain and a disability. However, there is no allegation or evidence indicating that such was first manifested in service. Therefore, service connection on the basis that a right shoulder disability began in service and has persisted is not warranted. Likewise, there is also no evidence or allegation that arthritis of the right shoulder has been diagnosed, let alone was first manifested to any degree within the first post-service year (i.e., the presumptive period). Thus, presumptive service connection for a right shoulder disability as a chronic disease (under 38 U.S.C. § 1112) is also not warranted. Consequently, what remains for consideration is whether a current right shoulder disability is somehow otherwise related to an event or injury service. Unfortunately, there is also no evidence or allegation of any event or injury in service involving the right shoulder. Thus, a threshold element of service connection is not established. Accordingly, service connection on the basis that a current right shoulder disability is otherwise related to an event or injury in service is also not warranted. 
The Board notes that no examination was conducted nor is one warranted in conjunction with the service connection claim for a right shoulder disability. In this regard, under 38 U.S.C. § 5103A (d), VA’s duty to assist includes providing a claimant a medical examination or obtaining a medical opinion when an examination or opinion is necessary to make a decision on a claim and the claims file contains competent evidence that the claimant has a current disability and indicates that the disability may be associated with the claimant’s service. The types of evidence that indicate that a current disability may be associated with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). 
Specifically, there is no indication that the Veteran’s right shoulder pain is related to service beyond the Veteran’s conclusory generalized lay statements. In this regard, the Board notes that a mere conclusory generalized lay statement that a service event or illness caused the claimant’s current condition is insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). The Court has held that VA is not required to provide a medical examination when there is not credible evidence of an event, injury, or disease in service. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). Therefore, the Board finds that a VA examination and/or opinion is not necessary to decide the claim.
In light of the above, the Board finds that the preponderance of the evidence is against the claim of service connection for a right shoulder disability, the benefit of the doubt rule does not apply, and the appeal in this matter must be denied.
Increased Rating Claims
Disability ratings are assigned in accordance with VA’s Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from a disability. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321 (a), 4.1. When a question arises as to which of two ratings shall be applied under a particular diagnostic code, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.
In a claim for increase, the present level of disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where the evidence contains factual findings that demonstrate distinct time periods when the service connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, staged ratings are to be considered. See Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. Consideration is given to the potential application of the various provisions of 38 C.F.R. Parts 3 and 4, whether or not they are raised by the Veteran, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991).
In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, are expected in all instances. 38 C.F.R. § 4.21.
Entitlement to a rating in excess of 30 percent disabling for service-connected headaches from May 9, 2017 to May 30, 2018. 
The Veteran contends that he should be assigned a higher rating for his service-connected headaches. However, he has provided no specific allegations to support his contention. 
The Veteran’s headaches are rated as 30 percent disabling effective May 9, 2017, under 38 C.F.R. § 4.124a, Diagnostic Code 8881-8100. In the selection of code numbers assigned to disabilities, injuries will generally be represented by the number assigned to the residual condition on the basis of which the rating is determined. With diseases, preference is to be given to the number assigned to the disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. 38 C.F.R. § 4.27. The hyphenated diagnostic code in this case indicates that a neurological disability due to undiagnosed illness under Diagnostic Code 8881 is the service-connected disorder and migraine headaches under Diagnostic Code 8100 is a residual condition.
Diagnostic Code 8100 provides that a 30 percent rating is warranted for headaches with characteristic prostrating attacks occurring on an average once a month over the last several months; a higher (50 percent) rating (the maximum available schedular rating) is warranted for migraines with very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a.
The Rating Schedule does not define “prostrating.” However, “prostration” has been defined as “complete physical or mental exhaustion.” Merriam-Webster’s New Collegiate Dictionary 999 (11th ed. 2007). “Prostration” has also been defined as “extreme exhaustion or powerlessness.” Dorland’s Illustrated Medical Dictionary 1554 (31st ed. 2007). According to Stedman’s Medical Dictionary, 27th Edition (2000), p. 1461, “prostration” is defined as “a marked loss of strength, as in exhaustion.” See e.g. Eady v. Shinseki, No. 11-3223, 2013 WL 500460 (Vet. App. Feb. 12, 2013). 
Additionally, the terms “productive of severe economic adaptability” have not been clearly defined by regulations or by case law. The Court has noted that “productive of” can either have the meaning of “producing” or “capable of producing.” Pierce v. Principi, 18 Vet. App. 440, 445 (2004). Thus, migraines need not actually “produce” severe economic inadaptability to warrant the 50 percent rating. Id. at 445-46. Further, “economic inadaptability” does not mean unemployability, as such would undermine the purpose of regulations pertaining to TDIU. Id. at 446; see also 38 C.F.R. § 4.16. The Board notes, however, that the migraines must be, at a minimum, capable of producing “severe” economic inadaptability.
After a review of all the evidence of record, the Board finds that the weight of the competent, credible, and probative evidence of record establishes entitlement to a 30 percent disability rating, but no higher, for the Veteran’s undiagnosed illness manifested by headaches.
Post-service treatment records reflect the Veteran’s reports of and treatment for headaches. 
In October 2017, the Veteran underwent a VA Gulf War examination to include a headaches examination. The Veteran reported that he got 3-4 headaches per day that began about 4 years prior. The Veteran described intense, throbbing pain usually around his right eye. He reported that he took BC powder for the pain which usually lasts an hour. He noted that his concentration and focus are affected at work and that sunlight tends to exacerbate his headaches so he had to wear sunglasses. Upon examination and after a review of the record, the examiner noted that the Veteran experienced pulsating or throbbing pain, localized to one side and sensitivity to light. The examiner further noted that the Veteran’s pain lasted for less than 1 day and was typically on his right side. The examiner also found that while the Veteran suffered from prostrating attacks, such occurred only once a month and they were not productive of severe economic inadaptability. The examiner noted no other pertinent physical findings, complications, conditions, signs or symptoms. 
After a thorough review of the evidence of record, there is no evidence or even allegation that the Veteran has had headaches of such frequency or severity (manifested by very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability) so as to warrant a higher 50 percent rating. The examination report and treatment records show that he reports having three to four headaches per day, with headaches of an incapacitating nature occurring only once a month. Moreover, there is no evidence or allegation suggesting that his headaches cause severe economic inadaptability; the Veteran reported that while his headaches impacted his work, they were not productive of severe economic inadaptability, as he remained employed for the period on appeal. The disability picture of the headaches presented by the record is not one of very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability. Accordingly, a rating in excess of 30 percent for migraine headaches is not warranted.
In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against a higher rating, to that extent the doctrine is not applicable. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. 55 -57.
Entitlement to a rating in excess of 30 percent disabling for service-connected PTSD also claimed as anxiety and depression, from May 9, 2017 to May 30, 2018.
The Veteran contends that he should be assigned a higher rating for his service-connected PTSD also claimed as anxiety and depression. However, he has provided no specific allegations to support his contention. 
PTSD, anxiety and depression are evaluated under VA’s General Rating Formula for Mental Disorders. Under the formula, a 30 percent evaluation is assigned with evidence of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.
A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment, impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.
A 70 percent rating is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id.
A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.
As the United States Court of Appeals for the Federal Circuit explained, evaluation under 38 C.F.R. § 4.130 is “symptom-driven,” meaning that “symptomatology should be the fact-finder’s primary focus when deciding entitlement to a given disability rating” under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The symptoms listed are not exhaustive, but rather “serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering “not only the presence of certain symptoms [,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas”- i.e., “the regulation ... requires an ultimate factual conclusion as to the Veteran’s level of impairment in ‘most areas.’” Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9411. 
Further, when evaluating a mental disorder, the Board must consider the “frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission,” and must also “assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination.” 38 C.F.R. § 4.126 (a). 
Effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated “DSM-V.” The Board notes that this case includes examinations conducted in accordance with the DSM-IV as well as the DSM V. Nonetheless, according to the DSM-V, clinicians do not typically assess GAF scores. The DSM-V introduction states that it was recommended that the GAF be dropped from DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. 
In determining the level of impairment under 38 C.F.R. § 4.130, a rating specialist is not restricted to the symptoms provided under the diagnostic code, and should consider all symptoms which affect occupational and social impairment, including those identified in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV or DSM V). See Mauerhan, 16 Vet. App. at 436 (2002). If the evidence demonstrates that a claimant suffers symptoms or effects that cause an occupational or social impairment equivalent to those listed in that diagnostic code, the appropriate, equivalent rating is assigned. See Mauerhan, 16 Vet. App. at 436.
Within the DSM-IV, Global Assessment Functioning (GAF) scale scores ranging from 1 to 100 reflect “psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.” Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996). GAF scores ranging from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). 
Based on a review of the evidence of record, the Board finds that an evaluation in excess of 30 percent for the Veteran’s service-connected PTSD is not warranted.
During the period on appeal, the medical evidence of record reflects that the Veteran’s PTSD was manifested by symptoms that included depressed mood, anxiety, panic attacks more than once a week, chronic sleep impairment depression, loss of interest, feelings of worthlessness, and fatigue. On examination, VA clinicians generally noted that the Veteran’s behavior, speech and thought processes were all within normal limits and the Veteran was oriented to time, people and place. There was no evidence of auditory or visual hallucinations and the Veteran denied suicidal and homicidal ideation (although, he did passive thoughts of death, but without any serious ideation, intent or plan). The Veteran was married and employed throughout the time on appeal. 
Post-service treatment records reflect the Veteran’s reports of depressed mood, disturbances of motivation and mood, anxiety, fatigue and chronic sleep impairment. An October 2017 treatment note reflects that the Veteran reported “regression” in mood and increased sleep problems. Upon examination, the examiner noted that the Veteran had adequate hygiene and grooming, was cooperative, no evidence of psychomotor agitation or retardation, his mood was anxious, his affect was full in range and congruent with mood, his speech was within normal limits, his thought process was logical and goal oriented, alert, his insight was fair, and his attention and concentration was within normal limits. 
In October 2017, the Veteran underwent a mental health examination. The examiner confirmed the Veteran’s diagnosis of PTSD and major depressive disorder per the DSM-V criteria. The examiner found that the Veteran’s symptoms caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. Upon examination, the examiner noted depressed mood, anxiety, panic attack more than once a week, and chronic sleep impairment. The examiner further noted that the Veteran’s behavior, speech and thought processes were all within normal limits and the Veteran was oriented to time, people and place. The Veteran denied any suicidal or homicidal ideations but noted depression, loss of interest, feelings of worthlessness, fatigue, and insomnia. The examiner also noted passive thoughts of death but no serious suicidal ideation, intent or plan. 
The Board finds that during the entire period on appeal, the Veteran’s PTSD most closely approximates the currently assigned 30 percent rating. In that regard, the Veteran did not demonstrate the symptoms of such severity, frequency, and duration as to support a higher rating. Indeed, the Veteran was married and employed throughout the entire period on appeal and did not indicate any problems with either his personal or work relationships. Moreover, the symptoms the Veteran described to the VA examiners, including depression, anxiety, panic attacks, loss of interest, and feelings of worthlessness, are contemplated by the 30 percent rating criteria. The Board acknowledges that while the Veteran reported passive thoughts of death, he repeatedly denied suicidal or homicidal intent, ideation or plan. Furthermore, during the examinations of record, the Veteran’s affect was appropriate, he was goal directed, his behavior was appropriate and cooperative, and his insight and judgment were good. Such findings, and his overall mental health picture as evidenced during the VA examination and mental health treatment, are in keeping with the currently assigned 30 percent rating.
Furthermore, while the Veteran and the examiners noted fatigue and chronic sleep impairment, the Veteran is separately service-connected and rated for chronic fatigue syndrome and sleep apnea. Therefore, to compensate the Veteran for such symptoms in relation to his PTSD would be akin to pyramiding. See 38 C.F.R. § 4.14.
The Board has considered the Veteran’s assertions as to his symptomatology and the severity of his condition, but, to the extent he believes he is entitled to a higher rating, concludes that the findings during medical evaluation are more probative than the Veteran’s assertions to that effect. While the Veteran has received VA treatment during the course of the appeal, the findings on those visits are largely consistent with the rating currently assigned and with the findings on VA examination. As such, the Board has relied heavily on the VA examination, which duly considered the Veteran’s subjective symptoms, but nonetheless recorded mental status examinations showing limitation of function that more nearly approximate the criteria for a 30 percent evaluation. 
In sum, the Board finds the preponderance of the competent and probative evidence more nearly approximates the criteria for a 30 percent evaluation, and an increased rating is denied. The record simply does not reflect the types of symptoms and their effects contemplated for a 50, 70 or 100 percent rating.
In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against a higher rating, to that extent the doctrine is not applicable. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. 55 -57.
 
L. M. BARNARD
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD J. Unger, Associate Counsel